JOSÉ R. SANTIAGO, Plaintiff and Appellant, *v.* SALVADOR E. SUAZO, Defendant and Appellee.

No. 314.   Decided March 15, 1963.

*Félix Ochoteco, Jr.,* for appellant.   *Juan B. Soto* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

By private contract executed on October 1, 1956, José R. Santiago and Tomás Casiano organized a partnership under the name of "Tropical Garden" to operate a cafeteria of the same name situated in the Commercial Center of Lloréns Torres Housing Project. Santiago would be the silent partner and Casiano the industrial partner. The lat-

ter would be the manager of the business and all operations would be transacted in his name, including the lease of the premises owned by the Housing Authority. He would receive 30 per cent of the profits and the silent partner the other 70 per cent. Upon the sale or liquidation of the business the total capital recovered would belong exclusively to Santiago, the silent partner.[1]

About one year after the business was operating they decided to sell it. Salvador E. Suazo, a businessman, wished to buy it and to that end he conferred with Casiano, the industrial partner and manager of the business. Suazo noticed that the licenses appeared in Casiano's name and also verified with the Housing Authority that Casiano was the lessee of the premises. For the purposes of the transaction, Casiano always took Suazo to see Juan A. Santiago, brother and representative of the silent partner in the execution of the contract of sale.

On September 28, 1957 José R. Santiago sold the business to Suazo for the sum of $10,000. This price included the value of the furniture and equipment as well as the use of the premises. On that same date and in order to pay the price of the sale, Suazo, in his own right and as attorney in fact of his wife, signed and delivered to vendor Santiago a note to bearer for the sum of $10,000, with interest at 8 per cent annually, plus $1,000 for costs and attorney's fees, secured by mortgage on certain real property situated in Guaynabo. On the same date the said mortgage note was executed, Suazo paid to the vendor the sum of $1,000, for which the latter gave him two receipts for $500 each, the text of which is as follows:

"Received from Salvador E. Suazo the sum of Five Hundred dollars ($500) for credit to the Ten Thousand Dollars ($10,000)

---

[1] On June 15, 1956 the Municipal Housing Authority of the Capital leased the premises to Casiano to operate a cafeteria. The reason why Casiano appeared as lessee was that the financial partner did not qualify as a lessee.

mortgage note constituted by deed No. 189, executed before José Quiñones Elías on September 28, 1957.

Santurce, Puerto Rico, October 1, 1957.

José R. Santiago<br>By: Juan A. Santiago

Accepted:

(s) S. E. Suazo

Witness:

(s) Carmen S. de Pérez
Carmen S. de Pérez."

The conversations and transactions always took place in the office of José R. Santiago, the vendor's brother.

Suazo took material possession of the business and started to operate it. Eventually the Housing Authority transferred to him the contract of lease of the premises. Apparently the business was not profitable and during some nine months he failed to pay the lease rental of the premises.[2] He also failed to pay the interest on $9,000 which he owed Santiago.

Thus, Suazo and the Housing Authority agreed that the latter would take over the business and collect the lease rental due from the proceeds of the equipment and furniture. The equipment and furniture was sold for the sum of $2,700, out of which the Housing Authority collected $2,034 back rental and the difference of $666 was delivered to Suazo.

In June 1958 José R. Santiago brought an action against Suazo to foreclose the mortgage summarily. By virtue of an acceleration clause contained in the mortgage deed,[3] he claimed the $9,000 principal, $560 interest due since October 1, 1957, and $1,000 agreed upon for costs, expenses and attorney's fees.

---

[2] This debt included rental corresponding to months prior and subsequent to the date in which the lease contract was transferred in Suazo's name.

[3] The following was an express condition of the mortgage contract:

"Nonpayment of three successive monthly interest payments shall entitle the creditor to foreclose the mortgage."

Defendant Suazo answered admitting the fact of the execution of the mortgage note and that plaintiff was the owner thereof, but he denied that the latter had acquired the same for just or good consideration. He also denied that he owed the amount of interest claimed. Lastly, he filed a counterclaim alleging that he had purchased the "Tropical Garden" business from a brother of plaintiff for the sum of $10,000, secured by a mortgage note, which he promised to pay on September 28, 1959, and

"2. That defendant purchased the said business and signed the obligation through error, fraud and deceit, since he was not aware that the business belonged to Tomás Casiano, in whose name appeared the municipal and insular licences as well as the lease contract made with the P. R. Housing Authority.

"3. That defendant, despite the many steps taken, has been unable to have those licenses transferred in his name, nor has he obtained the absolute ownership thereof, and that such defect was known to the vendor and the plaintiff and unknown to the vendee.

"4. That defendant has good reason to fear being disturbed in the possession and ownership of the thing purchased, or by an action of revendication on the part of Tomás Casiano."

The trial having been held, at which the facts described at the outset of this opinion were established, the trial court rendered judgment dismissing the complaint and sustaining the counterclaim. Consequently, it ordered the cancellation of the mortgage note and of the corresponding recording of the mortgage in the Registry of Property, and further ordered plaintiff to return to defendant the $1,000 which the latter credited to the selling price, less $666 which defendant retained out of the selling price of the furniture and equipment.

The trial court held that the contract of sale executed between plaintiff and defendant was null and void because plaintiff not being the owner of the contract of lease of the premises, he could not sell it and that that part of the object of the contract was illicit. It also held that since the illicitness of one of the objects of the contract was due

to plaintiff's fault, the provisions of 31 L.P.R.A. § 3517(2), in relation to the provisions of § 3514, were applicable.

■ Some of the findings of fact erroneously made by the trial court served as basis for the conclusions of law on which the judgment rendered by that court is founded. Finding of fact No. 6 reads as follows:

"6. The partnership between plaintiff and Casiano was apparently liquidated before the former sold to the latter, without the liquidation having shown any profits.[4] Yet, plaintiff concealed from defendant the fact that Casiano was the lessee of the premises. Nor did he inform that the licenses appeared in Casiano's name." Footnote 4, inserted in that finding, reads: "It is also apparent that the value of the right to use the premises was not considered as part of the assets subject to liquidation."

---

[4] Suazo testified:

"Q. On October 1, in the belief that the business belonged to Casiano, according to your statement, did you deliver $1,000 to Juan Angel Santiago?

A. Yes, sir.

Q. And how do you explain that?

A. Because for all purposes more or less Casiano pretended that he owed money to Juan Angel Santiago, or that had a business or partnership with him, and everything was done in Santiago's office.

Q. Showing you these receipts...

A. I admit this, that I gave him these $1,000.

Q. Examine the signature.

A. Yes, sir.

Q. Does it say or not, 'José R. Santiago, by Juan Angel Santiago'?

Defendant:

The document speaks for itself, Your Honor.

Plaintiff:

Yes, exactly. The witness need not answer, if he does not want to.

Witness:

Yes, I signed it.

Q. And does that prove what it says there?

A. Yes, sir. I gave him the $1,000.

Q. Did you know at that moment whether that business belonged to José R. Santiago?

A. No, sir. I never did.

Q. Yet, these receipts were signed in that manner?

A. Yes, I admit that. I gave the $2,000 and left. I admit that."

(Tr. Ev. 38–39.)

From an examination of the transcript of the evidence it will be seen that these findings are not supported by the evidence. The only witness who testified on the liquidation of the partnership existing between Santiago and Casiano was plaintiff himself. We copy from the record the pertinent part of his testimony:

"Q. Has Casiano ever asked you to liquidate that business?

A. No, sir.

Q. To liquidate the partnership?

A. The partnership was liquidated.

Q. Was it liquidated?

A. Yes, sir.

Q. And it was liquidated how long before the transaction with Suazo?

A. The partnership was liquidated at the same time as the sale.

Q. Ah! At the same time as the sale?

A. When the sale was executed, the partnership was liquidated.

Q. Then, when the sale was executed, your brother, Mr. Suazo and Mr. Casiano were present?

A. I believe so.

Q. In what did the liquidation consist as respects Mr. Casiano?

A. I would have to explain the arrangement with Mr. Casiano.

Q. What was the arrangement? Tomás Casiano is the person at the head of the business. The licenses are in his name. The lease contract is also in his name. You say that when the transaction was made with Suazo and the deed was executed, you were still a partner of Tomás Casiano. My question is, how was the business settled with Casiano?

A. Since there were no profits... Mr. Casiano agreed with me that he would receive 30 per cent of the profits if there were any. Since there were none, no liquidation could be made to him. In other words, it was liquidated, but he did not receive any amount.

Q. So, that would mean 30 per cent of the $10,000?

A. The fact is that there were no profits.

Q. What about the $10,000?

A. I can prove that the investment there was more than $10,000.

Q. But you had agreed that the price was $10,000.

A. That was part of the investment I was making." (Tr. Ev. 15–16.)

As to the fact that plaintiff concealed from defendant that Casiano was the lessee of the lot and that he did not inform him either that the licenses were in Casiano's name, the evidence as a whole shows that there is no reasonable basis for that finding. It is hard to believe that a businessman who is going to invest the sum of $10,000 in the purchase of a cafeteria business which is being operated transacts the business without finding out who is the owner of the business, who is the lessee of the premises where it is operated, and the party in whose name the licenses required by law for operating the business are issued. That is why defendant Suazo expressed himself as follows on those points:

"Q. When you close the deal, did you make sure in whose name the cafeteria appeared?

A. No, sir.

Q. What kind of business was it?

A. A cafeteria, and it also had liquor, cigarettes and the like.

Q. Did you see the licenses?

A. Yes, sir.

Q. Did that business have liquor and cigarette licenses?

A. Yes, sir, it did. It had municipal and state licenses.

Q. In whose name were those licenses?

A. In the name of Tomás Casiano Morales all of them.

Q. Before closing the deal, the purchase of that business, did you make any inquiries as to the premises where that business was being operated?

A. No, sir.

Q. Didn't you inquire to whom the premises were paid?

A. Since Mr. Casiano told me that the premises were in his name, we went to the Housing Authority and it was in his name.

Q. Was it then that you tried to find that out?

A. Yes, sir.

Q. Why then did you say no before?

A. Ah! Yes, sir. It was made, yes, sir.

Judge:

Q. Before closing the deal, did you know or not that the licenses were in Tomás Casiano's name?

A. No, sir.

Q. Didn't you know it?

A. No.

Defendant:

Q. What?

A. That I did not know that the licenses were in Tomás Casiano Morales' name. I dealt with him and, naturally, he took me to see Juan Angel. We spoke about the business and he told me that Mr...." (Tr. Ev. 26–27.)

The only conclusion possible is that Suazo knew at the time of executing the contract of sale that Casiano was the lessee of the premises and that the licenses had also been issued in his name.

Nor is there any basis in the evidence to infer that "it is also apparent that the value of the right to use the premises was not considered as part of the assets subject to liquidation." Casiano appeared in the partnership contract as an industrial partner. He made no contribution to the partnership other than his labor. It was agreed that Casiano would appear as lessee of the premises because Santiago did not qualify, and it was also agreed that the licenses should appear in Casiano's name. However, this does not imply that Casiano was the owner of the right to use the premises, namely, the owner of the lease contract. That was the understanding of the parties and of Casiano himself when the contract of sale was executed. Suazo knew that there existed a partnership between Santiago and Casiano, or at least that there existed relationship as respects the operation of the cafeteria. When the contract was executed Suazo took material possession of the premises. Casiano made no objection and demanded nothing from

Suazo at the time. The latter started to pay the lease rental, although Casiano still appeared as lessee. And we have already seen that the sale of the business included the assignment of the lease which was subject to approval by the Housing Authority. On the other hand, it is inconceivable that Suazo would buy and operate the cafeteria without including in the contract the assignment of the lease of the premises. And as a matter of fact, when the lessee agreed to assign the lease to Suazo, the latter paid nothing to Casiano.

■ There was, therefore, a contract of sale with all the requirements provided by law. Section 1213 of the Civil Code (31 L.P.R.A. § 3991). Hence, it was not null and void, as held by the trial court. Neither the consent nor the consideration of the contract in question is fatally defective. There was lawful consideration, and purchaser Suazo's consent was not given through error in the substance of the object of the contract, as alleged by appellee. We repeat that Suazo knew that he, Casiano, appeared as lessee of the premises where the business was established. Yet, he purchased from plaintiff Santiago and delivered to the latter the mortgage note which secured the selling price and also paid him $1,000, having received a receipt from Santiago which Suazo signed signifying his conformity in writing.

■■ Assuming, however, that the fact that the lease of the premises appeared in Casiano's name produced a partial defect of the object of the contract which could cause its nullity, Suazo ratified the same in full by his actions. It will suffice to recall that Suazo (1) paid the first lease rental in Tomás Casiano's name, (2) that the lease contract was subsequently assigned to him, (3) that he consented to sell the business, (4) that out of the proceeds of the sale he paid to the Housing Authority a debt assumed by Suazo as lessee of the premises, and (5) that he appropriated to himself, as owner, the balance of the proceeds of the sale

of the business, without the vendor's intervention and even after (according to Suazo's testimony) difficulties arose as a result of the fact that Casiano appeared as owner of the premises. Sections 1263 and 1264 of the Civil Code (31 L.P.R.A. §§ 3522 and 3523). In view of these facts, the least that may be said is that Suazo was precluded from challenging the validity of the contract of sale. *Cf. González* v. *Heirs of Díaz*, 69 P.R.R. 598; *García* v. *Central Alianza*, 69 P.R.R. 855; *Campos* v. *Central Cambalache*, 64 P.R.R. 57; *Amy et al.* v. *Heirs of Verges*, 37 P.R.R. 46.

We need not elaborate further in this opinion. The judgment rendered by the trial court is erroneous and should be reversed and another rendered instead sustaining the complaint and dismissing the counterclaim.